UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA- EASTERN DIVISION

| | |
|---|---|
| SHAWN ROA,<br><br>   Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration,<br><br>   Defendant. | ED CV 07-0759 SH<br><br>MEMORANDUM DECISION |

## I. PROCEEDINGS

On January 6, 2004, Plaintiff Shawn Roa filed an application for Supplemental Social Security Income in which she alleged being disabled as of January 1, 1990. She complained of diabetes, asthma, poor circulation in her extremities, and poor concentration and memory (which she attributed to an earlier bout of meningitis). Her claim was denied. She requested and was granted a hearing before an Administrative Law Judge (ALJ), who also denied her petition.

Plaintiff ultimately filed a Complaint on June 21, 2007, seeking review of

the ALJ's decision denying Supplemental Security Income disability benefits. Both parties consented to proceed before the United States Magistrate Judge. The parties thereafter filed the administrative record and a Joint Stipulation. The matter has been taken under submission.

## II. BACKGROUND

Plaintiff claims that, due to poor circulation and varicose veins, she is unable to stand for long periods of time, or even sit without elevating her legs. AR at 338. She also claims that it is difficult for her to leave her house due to an anxiety disorder, and that she suffers from poor memory and poor concentration. AR at 344.

The ALJ found that plaintiff suffered from diabetes, a history of meningitis, degenerative disc disease, cognitive disorder NOS, and anxiety disorder. AR at 14. However, he found that her symptoms were not as intense or persistent as she claimed. AR at 16. With regard to her varicose veins, though he acknowledged their presence, he noted that there was no evidence of deep venous incompetency or obstruction. AR at 14. With regard to her mental complaints, he acknowledged her aseptic meningitis but found no evidence of residual effects. *Id.* Based on these findings, he found that she had sufficient residual functional capacity (RFC) for a limited subset of occupations. AR at 15. In determining her RFC, he listed a number of limitations: she cannot lift more than 20 lbs (or 10 lbs frequently), she must limit the range of motion of both her head and arms, she cannot work around machinery or heights, she can only have moderate interaction with the general public or her supervisors, and she can only perform simple repetitive, habitual, object oriented, 3 to 4 step tasks. *Id.*

///
///
///

## III. DISCUSSION

An ALJ may only consider subjective complaints that are somehow tied to specific medical findings. SS Ruling 96-7p. Once some level of symptoms are explained by medical findings, the ALJ must determine whether a plaintiff's symptoms are sufficient to affect her ability to do work activities. *Id.* In considering the debilitating effects of the symptoms, the ALJ cannot rely on medical evidence alone, he must also consider an individual's subjective statements. *Id.* This of course involves a credibility finding. *Id.*

Here, plaintiff asserts that her symptoms are more pronounced than those found by the ALJ. In her testimony, she claimed to have trouble standing or even sitting for prolonged periods of time without elevating her legs. AR at 336. She testified that "most of the time" it felt "like [she was] walking on hot coals." AR at 336,39. In addition to her physical symptoms, she complained of anxiety and panic attacks that were pronounced enough to make it difficult for her to leave her house or to participate in large groups of people. AR at 171.

Although the ALJ found medical conditions that could explain her symptoms (varicose veins, anxiety disorder, and cognitive disorder among others) he dismissed her excess symptoms because he claimed that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." AR at 16. It is important to note that the medical evidence did not support a finding of malingering, and the ALJ did not make such a finding. Moreover, a psychiatric evaluation dated February 26, 2004, stated that plaintiff "appeared genuine and truthful" and that "[t]here was no evidence of exaggeration or manipulation." AR at 172. Another report, dated March 15, 2004, found no inconsistencies between her conditions and her allegations. AR at 191.

Once the claimant produces objective medical evidence of an underlying impairment, the ALJ may still reject the claimant's excess pain testimony, but only

by setting forth clear and convincing reasons for doing so. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)(citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)); see also *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). If a claimant is found to be malingering, then the ALJ does not need to set forth clear and convincing reasons for rejecting a claimant's excess pain testimony. *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1996), citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989); see also *Reddick*, 151 F.3d at 722. However, the ALJ here did not make a finding of malingering and, absent such a finding, the ALJ must state which pain testimony is not credible and what evidence led him to that decision; general findings of non-credibility are insufficient. *Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (citing Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). He "must either accept [claimant's] testimony or make specific findings rejecting it." *Id.*

Here, although he did address a few specific symptoms, the ALJ's finding was general in nature. He pointed out many inconsistencies that were not tied to any specific symptoms, and instead addressed plaintiff's credibility in general. Although, allegations of disabling pain may be contradicted if a claimant is able to spend a substantial part of the day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989), many of the points made by the ALJ were based on alleged inconsistencies which, when examined, are not material.

The ALJ claimed that there was inconsistency between plaintiff's testimony that her mother needed to balance her checkbook, and evidence that plaintiff had balanced her own checkbook in the past. AR at 17. However, plaintiff did not testify that she was incapable of balancing her checkbook. Instead she testified that her husband would "take money out" when she did balance the checkbook, and that he apparently avoided this behavior when the checkbook was managed by his own mother. AR at 336.

1    Similarly, the ALJ found an inconsistency between plaintiff's claims of
2 disability and the fact that she was caring for children until 2003. AR at 19.
3 However, it appears that, contrary to the ALJ's contention that the work "can be
4 quite demanding both physically and emotionally," (AR at 19), her work was
5 rather easy. She kept an on eye adolescents, who were probably quite self
6 sufficient, for a few hours before and after school. AR at 353. Furthermore, the
7 ALJ stated that she gave no reason for ceasing her work as a day care provider;
8 (AR at 19) however, it appears that she stopped when the children aged out of
9 government subsidized day care. AR at 352.

10   The same applies to plaintiff's ability to do household chores. The ALJ
11 cited plaintiff's written testimony concerning her chores, which he described as "a
12 full range of daily activities." AR at 19. However, close inspection of that
13 testimony reveals substantial limitations. Although she reported being in charge of
14 cooking for her household, her cooking was actually quite limited. AR at 77. She
15 cooked "things that are not complicated" like "spaghetti and hamburger helper"
16 and "a lot of microwave instant food." *Id*. Similarly, although she reported
17 cleaning dishes, doing laundry and performing other household chores, she also
18 reported that she was often unable to finish them, and that her son and husband
19 would finish them for her. *Id.*

20   The ALJ also pointed to plaintiff's spotty work history as evidence that
21 plaintiff simply did not want to work. AR at 19. This evidence is unpersuasive
22 since the plaintiffs alleged disability started almost twenty years ago, and the ALJ
23 made no finding of malingering. The ALJ needs to specifically address the
24 symptoms which he does not find credible. A general charge of low motivation is
25 insufficient.

26   The ALJ did address a few specific symptoms, but he exaggerated the
27 alleged inconsistencies. He cited a June 20, 2006 medical report which stated that
28 "[t]he claimant was noted to move and walk without difficulty," to question her

- 5 -

1  testimony that she had difficulties walking.  AR at 17.  However, she did not claim
2  that she could not walk, rather she claimed that she experienced severe pain if she
3  remained on her feet for too long, and that elevating her feet alleviated that pain.
4  AR at 339.

5        A district court is not permitted to make independent credibility
6  determinations; rather the court is constrained to only review only the reasons that
7  the ALJ asserts.  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).  It is error
8  to affirm an adverse credibility decision based on evidence that the ALJ did not
9  discuss.  *Id.*  However, the district court has the discretion to remand when an
10  ALJ's stated reasons for an adverse credibility determination are insufficient.

11  IV. <u>ORDER</u>

12        IT IS ORDERED that the decision of the Commissioner be reversed, and the
13  matter is remanded pursuant to Sentence 4 for further proceedings to determine
14  whether plaintiff's complaints of excess symptoms are credible.  If the ALJ
15  concludes that the plaintiff's subjective impairments are not entirely credible, he
16  must set forth clear and convincing reasons for doing so.

17  Date: <u>May 2, 2008</u>

/ s /
_____
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE